<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GARY ROSENBERG, | Civil Action No. 24-5761 (SRC) |
| Plaintiff, | **OPINION** |
| v. | |
| GARMIN INTERNATIONAL, INC., | |
| Defendant. | |

**CHESLER**<u>, District Judge</u>

This matter comes before the Court on Defendant's motion to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3) or, in the alternative, transfer this matter to the United States District Court for the District of Kansas. (ECF No. 3). Plaintiff opposes the motion. The Court has reviewed the papers and proceeds to rule on the motion without oral argument, pursuant to Federal Rule of Civil Procedure 78. For the following reasons, the Court shall grant the alternative relief sought in Defendant's motion and transfer this action to the District of Kansas, pursuant to 28 U.S.C. § 1404(a). Insofar as the motion seeks dismissal for improper venue, it will be denied as moot.

**I.    BACKGROUND**

Defendant Garmin International, Inc. ("Defendant" or "Garmin") removed this action from New Jersey state court based on diversity jurisdiction under 28 U.S.C. § 1332, as there is no dispute the parties are citizens of different states and the amount in controversy exceeds $75,000. Defendant is a corporation organized under the laws of Kansas, with its principal place of business

1

in Olathe, Kansas. Compl. at ¶ 2. Plaintiff Gary Rosenberg ("Plaintiff" or "Rosenberg") is a resident of New Jersey. Id. at ¶ 1.

The Complaint alleges the following facts. Rosenberg began working for Garmin in 2010 as a Regional Sales Manager for Garmin's Northeast Region—which includes New Jersey and several nearby states—and remained a Garmin employee until his termination in April 2023, at which time he was the Consumer Sales Area Manager for the Northeast Region. Id. at ¶¶ 8-9. Throughout Rosenberg's tenure at Garmin, he lived in New Jersey, operated out of New Jersey, and sought to manage and develop accounts in New Jersey. Id. at ¶ 10. Garmin terminated Rosenberg based on false allegations that he made inappropriate comments of a sexual nature towards other employees while attending company outings, and because he was otherwise a "difficult manager." See id. at ¶¶ 26-33. Rosenberg claims his firing was a pretext for unlawful age and gender discrimination under the New Jersey Law Against Discrimination ("NJLAD") as part of a campaign to force Garmin's male employees aged fifty and above out of the company. Id. at ¶¶ 62-72, 84-90. Rosenberg also claims breach of contract: specifically, he contends Garmin's actions breached the Garmin Code of Conduct, which is a document Garmin requires its employees "to review and acknowledge on [an] annual basis as a condition for employment." Id. at ¶¶ 11, 78-83.

## II.   DISCUSSION

Upon removal, Defendant filed the instant motion seeking dismissal for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3), arguing the District of New Jersey is not a proper venue for this matter under 28 U.S.C. § 1391(b).[1] Alternatively, Defendant seeks a transfer

---

[1] Plaintiff argues that 28 U.S.C. § 1441(a), rather than 28 U.S.C. § 1391(b), governs proper venue because Plaintiff filed this action in state court, and Defendant removed it to this District. Pl. Opp. Br. at pp. 6-7. According to Plaintiff, because 28 U.S.C. § 1390 instructs that "[t]his chapter shall not determine the district court to which a civil action pending in a State court may be removed," and Section 1441(a) provides that an action pending in state

2

of this case to the District of Kansas, pursuant to 28 U.S.C. § 1404(a). Because the Court concludes Defendant has carried its burden of demonstrating that transfer to the District of Kansas is in the interests of justice under Section 1404(a), the Court declines to address Defendant's Section 1391(b) arguments.

The Court must first determine whether Plaintiff could have properly filed this case in the District of Kansas. Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Garmin, the sole defendant in this matter, is incorporated and headquartered in Kansas. Consequently, Garmin is subject to personal jurisdiction in Kansas and "resides" there for venue purposes. See Daimler AG v. Bauman, 571 U.S. 117, 137 (2014) (noting a corporation is subject to general jurisdiction in its "place of incorporation and principal place of business"); 28 U.S.C. § 1391(b) ("[A]n entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question …."). Therefore, Plaintiff could have filed this action in the District of Kansas, had he so desired. See 28 U.S.C. § 1391(b) ("[A] civil action may be brought in— (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located ….").

---

court is properly removed to the district court "embracing the place where such action is pending," venue is proper here in the District of New Jersey and is not subject to challenge under Section 1391(b). See id. The remainder of Section 1390(c)'s language, however, is of utmost importance: "This chapter … shall govern the transfer of an action so removed as between districts and divisions of the United States district courts." Therefore, without deciding whether Section 1391 governs proper venue for a matter removed from state court, this Court may nevertheless analyze whether transfer of this matter to the District of Kansas is appropriate under 28 U.S.C. § 1404(a).

3

Next, the Section 1404(a) transfer analysis calls for the Court to weigh and balance various private and public interest factors. Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. Of Tx., 571 U.S. 49, 62-63 (2013). "The burden is on the moving party to establish that a balancing of proper interests weigh in favor of the transfer, and 'unless the balance of convenience of the parties is strongly in favor of defendant, the plaintiff's choice of forum should prevail.'" Shutte v. Armco Steel Corp., 431 F.2d 22, 25 (3d Cir. 1970) (quoting Owatonna Mfg. Co. v. Melroe Co., 301 F. Supp. 1296, 1307 (D. Minn. 1969)) (internal citation omitted). In Jumara, the Third Circuit provided a list of factors a district court should normally consider under this test. The private interest factors are:

> [1] [P]laintiff's forum preference as manifested in the original choice; [2] the defendant's preference; [3] whether the claim arose elsewhere; [4] the convenience of the parties as indicated by their relative physical and financial condition; [5] the convenience of the witnesses—but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and [6] the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).

Jumara v. State Farm Ins. Co., 55 F.3d 873, 879 (3d Cir. 1995) (internal citations omitted). The public interest factors are:

> [1] [T]he enforceability of the judgment; [2] practical considerations that could make the trial easy, expeditious, or inexpensive; [3] the relative administrative difficulty in the two fora resulting from court congestion; [4] the local interest in deciding local controversies at home; [5] the public policies of the fora; and [6] the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-80 (internal citations omitted).

As for the private factors, Plaintiff demonstrated a preference for venue in New Jersey by filing his Complaint in New Jersey state court. Garmin, on the other hand, has plainly expressed

4

its desire to litigate this matter in Kansas. A plaintiff's preference is "a paramount consideration in any determination of a transfer request." Shutte, 431 F.2d at 25. However, that preference warrants less deference when the chosen forum "has little connection with the operative facts of the lawsuit." Wm. H. McGee & Co. v. United Arab Shipping Co., 6 F. Supp. 2d 283, 290 (D.N.J. 1997) (citations omitted). Here, the bulk of the operative facts underlying Plaintiff's discrimination and breach of contract claims—namely, those facts surrounding the investigation into Plaintiff's alleged misconduct and the resulting decision to terminate his employment—occurred in Kansas. See Certification of David Kight ("Kight Cert.") at ¶¶ 15-18. Accordingly, the weight assigned to Plaintiff's venue preference is significantly diminished, but it nonetheless militates against transfer. See Gianakis v. Hilton Tucson El Conquistador Golf & Tennis Resort, No. 12-CV-4268, 2012 WL 5250463, at *2 (D.N.J. Oct. 22, 2012) (citing Wm. H. McGee & Co., 6 F. Supp. 2d at 290).

The third private factor supports transfer because, as noted above, Plaintiff's discrimination claim arose entirely from Kansas-based conduct. Although Plaintiff's breach of contract claim arose partially in New Jersey due to Plaintiff's performance of his employment duties here, the alleged breach occurred in Kansas. See Compl. at ¶ 81; Second Certification of David Kight ("Second Kight Cert.") at ¶¶ 11-18. Regarding the fourth factor, Plaintiff submits he is employed only part-time and generates little income, whereas Garmin reported $5.23 billion dollars in revenue for 2023. See Pl. Opp. Br. at pp. 13-14; Declaration of Gary Rosenberg ("Rosenberg Decl.") at ¶¶ 34-36. Given the parties' disparity in financial resources, this factor weighs against transfer. As to the fifth factor, the convenience of witnesses, Defendant has not argued that any witnesses would be unavailable to testify if this case remains in the District of New Jersey. Plaintiff, meanwhile, asserts that four highly important witnesses to his alleged misconduct at the

5

company outings—two of which are no longer Garmin employees—reside in Albany, New York City, Philadelphia, and Maine. See Rosenberg Decl. at ¶¶ 38-43. Plaintiff argues these witnesses are "far more likely to appear to testify at trial in New Jersey than in Kansas, given their geographic proximity to the forum." Pl. Opp. Br. at p. 15. However, because Plaintiff has not presented specific reasons why these witnesses would be unavailable to testify in Kansas beyond geographic proximity, this factor weighs only slightly against transfer. The remaining private interest factor—the location of books and records—is neutral, because neither side has represented that books or records could not be made available in either forum.

Taken together, the Jumara private interest factors do not satisfy Defendant's burden of demonstrating that transfer of this matter to the District of Kansas is warranted. However, the Court must also weigh Jumara's public interest factors to determine whether the balance of the collective public and private factors shifts the needle sufficiently towards transfer. Jumara, 55 F.3d at 879. The Court finds the first, second, and fourth public factors resoundingly favor transfer.

First and foremost are the relevant practical considerations that could ease resolution of this matter. Plaintiff's ability to prevail on his claims hinges on evidence located primarily in Kansas, where the alleged discriminatory discharge and breach of contract occurred. Nine out of ten anticipated defense witnesses are in Kansas, as are the employees involved in the investigation and decision to terminate Plaintiff. See Second Kight Cert. at ¶¶ 8-9, 11-16. Although keeping this case in New Jersey would decrease the travel distance of Plaintiff's four fact witnesses in the event of trial, that convenience is flatly trounced by the potential delays caused by transporting Defendant's witnesses here for trial. Defendant's Code of Conduct—the alleged contract in Plaintiff's Complaint—was drafted in Kansas by company executives located in Kansas. Id. at ¶¶ 17-18. All relevant documents in Defendant's possession are also in Kansas. Kight Cert. at ¶ 13.

6

Overall, allowing Plaintiff to pursue his claims in this District is the functional equivalent of allowing a New Jersey resident to litigate in a New Jersey court his or her claims arising from an automobile accident that occurred in Kansas and involved only Kansas residents. Therefore, the relevant practical considerations that could ease resolution of this matter support transfer.

Additional practical considerations merge with the first public factor—the enforceability of a potential judgment. Though the Court declines to decide the issue, it notes Garmin has argued that it is not subject to *in personam* jurisdiction in New Jersey, and Plaintiff's allegations and arguments for the existence of personal jurisdiction here are shaky. Garmin has no facilities, offices, telephone listings, mailing addresses, real property (rented or owned), or bank accounts in New Jersey, and neither designs nor manufactures goods in New Jersey. See Kight Cert. at ¶¶ 3-11. Presently, Garmin's sole connection to New Jersey is its employment of one individual[2] who works remotely from a New Jersey residence. Id. at ¶ 12. In contrast, there is no dispute personal jurisdiction over Garmin exists in Kansas, and a judgment from a Kansas court against Garmin would be enforceable. When there is a bona fide dispute over the existence of *in personam* jurisdiction and a more convenient forum exists, it is unnecessary to determine whether *in personam* jurisdiction exists in the initial forum. Schwilm v. Holbrook, 661 F.2d 12, 15-16 (3d Cir. 1981). In such a scenario, the interests of justice are furthered by transferring the action to the venue in which personal jurisdiction clearly exists. Id. Thus, transferring this case to the District of Kansas will conserve time, effort, and resources by eliminating the need to litigate whether this Court may exercise personal jurisdiction over Garmin.

---

[2] For context, Defendant submits it has "approximately 7,189 employees in the United States." Kight Cert. at ¶ 12.

With respect to the fourth public factor, the operative facts behind Plaintiff's claims occurred in Kansas, and Garmin is a Kansas corporation with its principal place of business there. Essentially, this is a Kansas case; Kansas has a clear interest in having Plaintiff litigate his claims there. Although New Jersey undoubtedly has an interest in handling controversies involving its inhabitants, particularly matters featuring claims of unlawful discrimination under the NJLAD, that interest "is small in comparison to the burden which would be visited upon New Jersey residents forced to serve on a jury to decide a case that happened elsewhere." Caldis v. Starbucks Coffee Co., No. 14-CV-1394, 2014 WL 2571557, at *3 (D.N.J. June 9, 2014) (citing Ferens v. John Deere Co., 494 U.S. 516, 529-30 (1990)); see also Gianakis, 2012 WL 5250463, at *3 ("No part of the events giving rise to Plaintiff's cause of action took place within the State of New Jersey. Instead, all of the relevant events took place in Arizona. As such, Arizona has an overriding interest in this local controversy."). Consequently, this factor supports transfer.

The remaining public interest factors are neutral. As to the first factor, neither side has argued or presented evidence as to administrative issues with litigating the case in the District of Kansas due to court congestion. Concerning the fifth factor, neither side has explicitly argued that the relevant public policies of New Jersey and Kansas differ here. Defendant submits the Kansas legislature has promulgated its own antidiscrimination statutes prohibiting employment discrimination on the basis of age and gender. See Def. Reply Br. at pp. 8-9; K.S.A. 44-1009; K.S.A. 44-1113. The NJLAD similarly bars such discrimination, see N.J.S.A. 10:5-4, and the policy statements of the NJLAD and Kansas Act Against Discrimination closely track one another.[3] Therefore, this factor is neutral.

---

[3] Compare N.J.S.A. § 10:5-3 ("The Legislature finds and declares that practices of discrimination against any of its inhabitants … are matters of concern to the government of the State …. The Legislature further finds that because of discrimination, people suffer personal hardships, and the State suffers a grievous harm.") with K.S.A. 44-1113 ("The practice or policy of discrimination against individuals in employment relations … is a matter of

8

As to public interest factor six and Plaintiff's NJLAD claim, although "[j]ustice requires that, whenever possible, a diversity case should be decided by the court most familiar with the applicable state law," Am. Senso Rx, Inc. v. Banner Pharmcaps, Inc., No. 06-CV-1929, 2006 WL 2583450, at *6 (D.N.J. Sept. 6, 2006) (quoting NCR Credit Corp. v. Ye Seekers Horizon, Inc., 17 F. Supp. 2d 317, 323 (D.N.J. 1998)), federal courts are well-versed in the McDonnell Douglas burden-shifting framework, which governs NJLAD employment discrimination claims based on circumstantial evidence. See Victor v. State, 203 N.J. 383, 408 (2010); Monaco v. Am. Gen. Assur. Co., 359 F.3d 296, 300 (3d Cir. 2004); see generally McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). As Plaintiff has not alleged facts or presented evidence that would constitute direct evidence of discriminatory intent or motivation, relying instead on circumstantial evidence, the McDonnell Douglas standard will govern his discrimination claim. See Compl. at ¶¶ 26-33, 62-72, 84-90. The Kansas district court is presumably as familiar with the McDonnell Douglas standard as this Court or any other federal district court. Moreover, "[f]ederal courts are generally well-equipped to apply the laws of other states and frequently do so in diversity cases." Edwards v. PHH Mortg. Corp., No. 17-CV-7807, 2019 WL 1001964, at *5 (D.N.J. Feb. 28, 2019).

Regarding Plaintiff's breach of contract claim, New Jersey choice of law rules would require this Court to apply the law "of the jurisdiction with the most significant relationship and closest contacts with the transaction and the parties." Am. Senso Rx, Inc., 2006 WL 2583450, at *6 (citations omitted). There are tenable arguments for either New Jersey or Kansas state law governing the alleged contract. See id. ("To determine which states have more significant contacts, New Jersey courts look to issues such as (a) the place of contract; (b) the place of negotiation of

---

concern to the state, since such discrimination threatens not only the rights and privileges of the inhabitants of the state of Kansas but menaces the institutions and foundations of a free democratic state.").

the contract; (c) the place of performance; (d) the location of the subject matter of the contract; and (e) the domicile, residence, nationality, place of incorporation, and place of business of the parties.") (citation omitted). Importantly, however, "[t]here is a presumption that the law of the place of contracting should apply to the interpretation of the contract." See Nat'l Util. Serv., Inc. v. Chesapeake Corp., 45 F. Supp. 2d 438, 447 (D.N.J. 1999) ("[T]hat forum's law should be applied unless the dominant and significant relationship of another state to the parties or the underlying issue dictates that this basic rule [should] yield.") (quoting Keil v. Nat'l Westminster Bank, Inc., 311 N.J. Super. 473, 484 (App. Div. 1998)) (second alteration in original). Based on Garmin's uncontested representations that it is a Kansas corporation with its principal place of business there, and that its Code of Conduct was drafted entirely in Kansas, the place of contracting appears to be Kansas. See id. (finding New Jersey was the place of contracting given the plaintiff solicited the defendant from New Jersey, and the contract was a "slightly modified" version of the plaintiff's standard form contract drafted in New Jersey). Though this Court declines to decide the choice of law issue, given the apparent presumption that Kansas law applies to the interpretation of the Garmin Code of Conduct, and the fact that the McDonnell Douglas framework governs Plaintiff's NJLAD claim, this factor is neutral.

Therefore, the Court concludes, based on its discretionary review and analysis of the relevant factors under Section 1404(a), that transferring this action to the District of Kansas will enhance the convenience of the parties and serve the interest of justice.

### III.   CONCLUSION

For the reasons discussed, this Court shall grant the alternative relief sought in Defendant's motion (ECF No. 3) and will transfer this matter. Pursuant to 28 U.S.C. § 1404(a), and in the interest of justice, this action shall be transferred to the United States District Court for the District

of Kansas. The motion for dismissal based on improper venue will be denied as moot. A conforming Order shall be filed herewith.

/s/ Stanley R. Chesler
STANLEY R. CHESLER
United States District Judge

Dated: July 3, 2024